UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: BOEING 737 MAX PILOTS LITIGATION | )<br>)<br>) Lead Case No. 1:19-cv-5008<br>) |
| THIS DOCUMENT RELATES TO ALL ACTIONS | ) Consolidated cases:<br>) 1:19-cv-5009; 1:19-cv-5012;<br>) 1:19-cv-5013; 1:19-cv-5015;<br>) 1:19-cv-5017; 1:19-cv-5019;<br>) 1:19-cv-5020; 1:19-cv-5021;<br>) 1:19-cv-5177; 1:19-cv-5517;<br>) 1:19-cv-5523; 1:19-cv-5911;<br>) 1:19-cv-5913; 1:19-cv-6807;<br>) and 1:19-cv-7294<br>)<br>) Hon. Steven C. Seeger |

## MEMORANDUM OPINION AND ORDER

Pilots X, Y, Z, A, B, C, D, E, F, G, H, I, J, K, L, & M sued Boeing about its 737 MAX airplanes. They flew planes that didn't crash, but they sued Boeing anyway. The anonymous pilots allege that they suffered an injury from the possibility of crashing, and from the ensuing grounding of the fleet. The public might wonder: who are these people? Boeing wants the public to know, too. Boeing filed a motion to unmask the plaintiffs, and force them to identify themselves as required by the Federal Rules.

Federal Rule 10(a) provides that every pleading "must name all the parties." *See* Fed. R. Civ. P. 10(a). The same rule applies to motions and other filings. *See* Fed. R. Civ. P. 7(b)(2); *see also* Fed. R. Civ. P. 17(a)(1) ("An action must be prosecuted in the name of the real party in interest."). Apart from the name of the Court itself, the names of the parties are the very first thing that members of the public typically see whenever they pick up a court filing. The names appear right at the top, front and center (or to the left), for all the world to see. At a glance, the

public knows who is asking the Court to exercise its power, and who allegedly injured the plaintiff.

A party's name is usually the last thing that the public sees, too. It is common for attorneys to put the name of his or her client at the very end of each filing, right beneath the signature block. So, from beginning to end, like bookends, court filings tell the public who is asking the Court to do what.

The text of Rule 10(a) provides that parties "must" disclose their "name[s]," without exception. *See* Fed. R. Civ. P. 10(a). Not some of the parties – "*all*" of the parties. *Id.* (emphasis added). A number of Federal Rules expressly create exceptions for "good cause." *See, e.g.,* Fed. R. Civ. P. 5(d)(3)(A), 6(c)(1)(C), 16(b)(4), 31(a)(5), 43(a). For example, Rule 26(c) authorizes district courts to shield discovery from public view when a party establishes "good cause." *See* Fed. R. Civ. P. 26(c). But Rule 10(a) isn't one of them.

The duty to self-identify is a small part of a much bigger tradition of transparency in federal court. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 576 (1980). Courts do the people's business out in the open. The courthouse is open to the public every business day. Hearings and trials welcome visitors, and the public can hear live testimony, see the evidence, and get their hands on almost all public filings. *See, e.g.,* Fed. R. Civ. P. 43(a) ("At trial, the witnesses' testimony must be taken in open court."). Anyone who wants to know what's going on can walk right in.

The public has a legitimate interest in the facts of a lawsuit, and the most basic fact is who is suing whom. "This rule serves more than administrative convenience. It protects the public's legitimate interest in knowing all of the facts involved, including the identities of the parties." *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992) (per curiam). "Pseudonymous

litigation undermines the public's right of access to judicial proceedings. The public has an interest in knowing the names of the litigants . . . and disclosing the parties' identities furthers openness of judicial proceedings." *Doe v. Public Citizen*, 749 F.3d 246, 273 (4th Cir. 2014) (internal citations omitted).

"Identifying the parties to the proceeding is an important dimension of publicness. The people have a right to know who is using their courts." *See Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997). "A trial is a public event. What transpires in the court room is public property. . . . There is no special perquisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it." *Craig v. Harney*, 331 U.S. 367, 374 (1947).

Transparency builds confidence. Litigating behind a curtain creates a shroud of mystery, giving the impression that something secret is going on. Secretive use of government power fuels suspicion and mistrust, and undermines confidence in the process and the outcome. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572 (1980) ("People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing."); *see also GEA Group AG v. Flex-N-Gate Corp.*, 740 F.3d 411, 419 (7th Cir. 2014) ("Secrecy in judicial proceedings is disfavored, as it makes it difficult for the public (including the bar) to understand why a case was brought (and fought) and what exactly was at stake in it and was the outcome proper."); *Goesel v. Boley Intern. (H.K.) Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013) ("The reason for this right of public access to the judicial record is to enable interested members of the public, including lawyers, journalists, and government

3

officials, to know who's using the courts, to understand judicial decisions, and to monitor the judiciary's performance of its duties.").

Suing someone anonymously is unfair to a defendant, too. There is a structural asymmetry in allowing an unnamed plaintiff to make allegations against a named defendant. A lawsuit inflicts harm on a defendant, but suing anonymously costs the plaintiff next to nothing. A no-name plaintiff is shielded by anonymity, and can accuse the defendant of misconduct "without shame or liability." *See Doe v. Smith*, 429 F.3d 706, 710 (7th Cir. 2005). As a matter of "[b]asic fairness," the playing field should be level. *United States v. Microsoft Corp.*, 56 F.3d 1448, 1463 (D.C. Cir. 1995). "If defendants get named, plaintiffs should too." *In re U.S. Office of Personnel Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 82 (D.C. Cir. 2019) (Williams, J., concurring in part and dissenting in part).

Adding one's name forces plaintiffs to put a little skin in the game. Public exposure helps to ensure that plaintiffs can back up what they say. It also promotes the longstanding interest in finding the truth through direct confrontation. "[D]efendants have a right to confront their accusers." *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011).

Public disclosure adds a healthy dose of accountability for the speaker. It is one thing to accuse someone of something anonymously; it is quite another to do so out in the open. Anonymity makes people feel less restrained in what they say. *See, e.g.,* The Internet. Speaking behind a curtain can create a false sense of security, tempting whoever-they-are to say things that they wouldn't say if everyone knew who was talking. People tend to be a little more careful about what they say and write when they have to put their name to it. (Judges are no exception.)

Time and again, the Seventh Circuit has frowned on the disfavored practice of bringing claims incognito. *See, e.g., Doe v. Smith*, 429 F.3d 706, 710 (7th Cir. 2005) ("[T]his circuit's

4

decisions . . . disfavor anonymous litigation. . . . The public has an interest in knowing what the judicial system is doing, an interest frustrated when any part of litigation is conducted in secret."); *Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004) ("Judicial proceedings are supposed to be open . . . . The concealment of a party's name impedes public access to the facts of the case, which include the parties' identity."); *Coe v. County of Cook*, 162 F.3d 491, 498 (7th Cir. 1998) ("We have criticized the overuse of pseudonyms in federal litigation, pointing out that the public has a right to know who is utilizing the federal courts that its tax dollars support."); *Doe v. Sheriff of DuPage County*, 128 F.3d 586, 587 (7th Cir. 1997) ("We hope we will not see too many more John or Jane Does in the future."); *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997) ("The use of fictitious names is disfavored.").

Despite the plain text of the rule, courts have carved narrow exceptions for uniquely vulnerable plaintiffs. For example, "fictitious names are allowed when necessary to protect the privacy of children, rape victims, and other particularly vulnerable parties or witnesses." *Doe*, 112 F.3d at 872; *see also Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992) ("A plaintiff should be permitted to proceed anonymously only in those exceptional cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity.").

A party who wants to litigate in the dark must identify "exceptional circumstances" that justify a "departure from the normal method of proceeding in federal courts." *Doe*, 112 F.3d at 872; *see also Dotson v. Bravo*, 321 F.3d 663, 668 n.4 (7th Cir. 2003) ("In rare instances will we allow parties to proceed under false names because the public has a right to know who is using the courts."). Anonymous filing is an "extraordinary break with precedent," *United States v. Microsoft Corp.*, 56 F.3d 1448, 1464 (D.C. Cir. 1995), so granting leave is a "rare dispensation,"

*James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993*).* *See* Arthur R. Miller, 5A Fed. Prac. & Proc. Civ. § 1321 (4th ed. 2019) ("[B]ecause of the presumption of openness with regard to American judicial proceedings, federal courts generally have been rather rigorous in not allowing the plaintiff to commence an action anonymously or to proceed under a pseudonym.").

Plaintiffs here don't come close to meeting that standard. Boiled down, their motion basically argues that Boeing is a big, powerful company, and that they fear retaliation if they have to identify themselves. *See* Dckt. No. 99, at 3-4. But Plaintiffs offer nothing concrete. A mere potential for retaliation, without more, is not enough to justify an extraordinary departure from public norms. *See Doe I v. Four Bros. Pizza, Inc.*, 2013 WL 6083414, at *10 (S.D.N.Y. 2013) (denying a motion to proceed anonymously even though "plaintiffs' retaliation concerns are real"); *Doe v. Pittsylvania County, VA*, 844 F. Supp. 2d 724, 733 (W.D. Va. 2012) ("Courts have rejected this type of 'it has happened before, therefore it *might* happen here' argument as being insufficient to justify a protective order cloaking plaintiff in anonymity.") (cleaned up; emphasis in original); *Qualls v. Rumsfeld*, 228 F.R.D. 8, 12 (D.D.C. 2005) ("Doe plaintiffs' general fears, like the declarations, do not persuade the Court of a need for pseudonymous litigation."). If the fear of retaliation were enough, public disclosure would be the exception rather than the rule.

It is not intuitive how Boeing could retaliate against them, either. Plaintiffs don't even work for Boeing. *See* Dckt. No. 99. They work for airlines who, in turn, purchased airplanes from Boeing. *Id.* at 2, 5. Plaintiffs do not back up the premise that Boeing controls who the airlines hire to fly their planes. Without more, it is a bit of a stretch to believe that there is a real risk of losing their jobs.

And even then, the potential harm to the Plaintiffs pales in comparison to the types of harms that typically receive protection. The worst-case scenario for the Plaintiffs is losing their jobs. That is no small thing, but transparency is no small thing either. At most, Plaintiffs allege a potential for economic harm, but "a threat of economic harm alone does not generally permit a court to let litigants proceed[] under pseudonym." *Qualls v. Rumsfeld*, 228 F.R.D. 8, 12 (D.D.C. 2005); *see also Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011) ("That a plaintiff may suffer embarrassment or economic harm is not enough."); *Abdel-Razeq v. Alvarez & Marsal, Inc.*, 2015 WL 7017431, at *4 (S.D.N.Y. 2015) ("[W]here, as here, the claims of purported economic harm are unsubstantiated, the claims are entitled to little weight."); *Doe v. Rider Univ.*, 2018 WL 3756950, at *2 (D.N.J. 2018) (same).

If Plaintiffs are worried about retaliation from Boeing, the cat is already out of the bag. Plaintiffs "already provided their identities to BOEING in affidavits filed with this Court under seal." *See* Dckt. No. 99, at 1; *see also id.* at 2. Boeing already knows who they are. It is hard to see how hiding Plaintiffs from everyone *except* Boeing could protect them from Boeing.

There is nothing scandalous about being identified as a pilot of a commercial airplane, even the 737 MAX. Piloting a commercial airliner is no badge of shame. It is, for many people, a source of pride – something to aspire to.

It is possible that some or all of the soon-to-be-named Plaintiffs don't want to proceed with this lawsuit if they have to identify themselves. Plaintiffs' brief hints as much: "Plaintiffs can only proceed if their identities as well as the identities of all similarly situated pilots are protected from public disclosure." *See* Dckt. No. 99, at 4. That is their choice. This Court will give Plaintiffs time to think it over.

7

Plaintiffs must file a third amended consolidated complaint by January 28, 2020. They must step into the light and sue in the open, or not at all. Plaintiffs must serve up their real names, not alphabet soup. The complaint "must name all the parties," as the Federal Rules expressly require. *See* Fed. R. Civ. P. 10(a). In the meantime, Boeing's Motion to Require Compliance with Federal Rule of Civil Procedure 10(a) is granted.

Date:   January 16, 2020

Steven C. Seeger
United States District Judge